COMMONWEALTH *vs.* PETER CAULEY.

SAME *vs.* JOHN L. KEEFE.

Worcester. September 30, 1889. — November 30, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Intoxicating Liquors — License — Amendment — " Store."*

A license issued to a common victualler, to sell intoxicating liquors to be drunk on the premises, which does not specify the room or rooms in which such liquors are to be sold or kept, as required by the Pub. Sts. c. 100, § 9, is defective, and the licensee cannot justify sales under it by showing that the vote of the licensing board, under which it was granted, specified such room or rooms, or that the board since such sales has attempted to conform it to the vote.

TWO COMPLAINTS for keeping, at Milford, intoxicating liquors with intent unlawfully to sell the same, on October 16 and Novem-

ber 12, 1888, respectively. At the trial of the cases in the Su-
perior Court, before *Brigham,* C. J., there was evidence tending
to show the following facts.

The defendants carried on the business of common victuallers
in Milford, for which each had a license, Cauley in rooms on
the first floor of a two and a half story building on East Main
Street belonging to Mrs. Michael Griffin, and Keefe in a room or
rooms in Scott's Building, so called, numbered 67 Main Street.
There were on the premises of each, at the times alleged, a
quantity of intoxicating liquors kept by them for sale. Each
defendant had at the same time what purported to be a license
of the first class to sell intoxicating liquors to be drunk on the
premises, issued to him by the board of selectmen of Milford ;
that issued to Cauley reciting that he was " doing business at
East Main Street in Mrs. Griffin's two and a half story build-
ing," and the one issued to Keefe that he " was doing business
at Scott's Building, numbered 67 Main Street." The words
" his store on " had been interlined between the words " at " and
" East Main Street," in the license issued to Cauley; and the
words " his store in " had been interlined between the words
" at " and " Scott's," in that issued to Keefe.

The defendants offered to prove that the board of selectmen,
before issuing the licenses, inspected their premises, and voted
to grant a license to each for his store in the buildings men-
tioned; that the board at a meeting held on January 1, 1889,
voted to correct the omissions in the licenses by making the
interlineations above described; that the town clerk, who acted
as clerk for the board, then interlined the above words in its
presence, and recorded the same in its records ; and that there-
upon the licenses as thus amended were returned by the board
to the defendants. The judge excluded this evidence, and the
defendants excepted.

The judge instructed the jury, that the licenses as originally
issued and as changed by the selectmen would not justify the
defendants in keeping liquors for sale in the buildings described
in the licenses at the times alleged, and submitted the cases
to them.

The jury in each case returned a verdict of guilty; and the
defendants alleged exceptions.

*J. Hopkins & H. E. Fales*, for the defendants.

*A. J. Waterman*, Attorney General, (*H. A. Wyman*, Second Assistant Attorney General with him,) for the Commonwealth.

KNOWLTON, J.   It is provided in the Pub. Sts. c. 100, § 9, that " Each license of the first, second, and third classes . . . shall specify the room or rooms in which such liquors shall be sold or kept by a common victualler.   No person licensed as aforesaid and not licensed as an innholder shall keep, sell, or deliver any such liquors in any room or part of a building not specified in his license as aforesaid."   In licenses of this kind the Legislature has seen fit to require, not merely a general statement of the place, but a specification of the room or rooms where the sales may be made.   Other parts of the statute suggest reasons for this requirement.   Some of these appear in the conditions which are to be inserted in licenses, and in the provisions of § 12 of this chapter, which require the closing of all entrances to the licensed premises other than those from the public street or streets on which the premises are situated, and the removal of screens, blinds, curtains, ground-glass windows, or other obstructions which may interfere with a view of the interior of the licensed premises, and forbid the placing or maintenance by licensees of such obstructions in such a way as to interfere with a view of the business conducted upon the premises, and in the requirement of the St. of 1888, c. 139, that there shall be no interior communication between the licensed premises and a dwelling or tenement of any family.   We are of opinion that no general designation of licensed premises which fails to make certain the room or rooms in which the liquors may be kept or sold will answer the requirement of this statute.

In the cases at bar, the words " his store on " were interlined between the words " at " and " East Main Street " in the license issued to Cauley, and the words " his store in " before the words " Scott's Building" in that issued to Keefe.   Without the interlineations, the only designation of the place to which the license applied was by naming the building in which the business was to be conducted.   That was manifestly insufficient. The cases were tried upon the assumption by all the parties that the interlineations were made after the commission of the

alleged offences. The defendants offered to prove that they were so made by vote of the selectmen to correct clerical errors and omissions in the licenses, and excepted to the exclusion of the offered evidence.

We are of opinion that a license granted under the Pub. Sts. c. 100 is the paper issued to the licensee, and not the vote under which the paper is issued. It must be signed by the mayor or the chairman of the selectmen, and by the clerk of the city or town by which it is issued, and must be recorded in the office of such clerk, and the licensee must pay a fee for recording it. Pub. Sts. c. 100, § 5. The license, or a copy of it, certified by the clerk of the city or town, must be displayed in a conspicuous position, where it can easily be read, on the premises where the business is to be conducted. Pub. Sts. c. 100, § 9.

The written license determines the rights of the licensee, and he is bound at his peril to know its contents and keep within its provisions. *Commonwealth* v. *Rafferty,* 133 Mass. 574. It follows that he cannot justify an act not authorized by the terms of his license by showing that the license does not conform to the vote under which it was granted, and that it should have been granted in such a form as to furnish him a justification.

Whether the licenses in the present cases were sufficiently specific after they were amended, it is unnecessary to consider.

*Exceptions overruled.*