In re Objections and Defenses to Real Property Taxes for the 1979 and 1980 Assessments.

Gary HEGENES, Relator,

v.

STATE of Minnesota, Respondent,

County of Hennepin, Respondent.

No. 82–355.

Supreme Court of Minnesota.

Jan. 7, 1983.

Lapp, Lazar, Laurie & Smith, Benjamin J. Smith and Douglas J. Shiell, Minneapolis, for relator.

Warren Spannaus, Atty. Gen., and James W. Neher, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for State of Minn.

Thomas L. Johnson, County Atty., and Robert T. Rudy, Asst. County Atty., Minneapolis, for County of Hennepin.

SIMONETT, Justice.

The taxpayer challenges, on equal protection grounds, the constitutionality of a state tax statute separating into different classes nonhomestead residential properties of three units or less (duplexes and triplexes) and those properties with four or more units. The Tax Court held the classification to be constitutional, and we affirm.

In 1979 the legislature enacted Minn.Stat. § 273.13, subd. 19 (1979), which read in part as follows:

> *Class 3d, 3dd.* Residential real estate containing four or more units, other than seasonal residential, recreational and homesteads shall be classified as class 3d property and shall have a taxable value equal to 40 percent of market value. Residential real estate containing three or less units, other than seasonal residential, recreational and homesteads, shall be classified as class 3dd property and shall have a taxable value equal to 32 percent of market value.

In other words, residential real estate of four or more units constitutes one class taxed at 40% of market value, while residential real estate of less than four units comprises a second class taxed at a lower rate of 32%. For assessment years subsequent to 1979, the rates for the two classes have been annually adjusted, but with the smaller properties still taxed at a lower rate.

The relator-taxpayer, Gary Hegenes, owns four apartment buildings in Minneapolis ranging in size from four to fourteen units. He challenges the assessments for 1979 and 1980, contending that the classification created by Minn.Stat. § 273.13, subd. 19 (1979), violates the uniformity clause of the state constitution and the equal protection clause of the federal constitution. As stated, we disagree. Since our state's uni-

formity clause is no more restrictive than the federal clause, *Matter of McCannel,* 301 N.W.2d 910, 916 n. 4 (Minn.1980), we shall discuss the two clauses together.

We have often observed that a taxpayer carries a heavy burden in challenging a tax statute under the uniformity clause. *See, e.g., Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 142 (Minn.1980); *Miller Brewing Co. v. State,* 284 N.W.2d 353 (Minn.1979); *Contos v. Herbst,* 278 N.W.2d 732 (Minn.1979). In *Matter of McCannel,* 301 N.W.2d at 917, we reiterated:

> "The propriety of classification for the purpose of legislation is primarily for the legislature. Laws passed by the legislature are presumed to be valid, so we assume that the legislature makes inquiry and rightly determines the propriety of the classification which it adopts. *This court will not disturb the legislative determination unless the classification is clearly arbitrary and has no reasonable basis.*"

(*Quoting In re Taxes on Property of Cold Spring Granite Co.,* 271 Minn. 460, 466, 136 N.W.2d 782, 787 (1965), and *Elwell v. Hennepin County,* 301 Minn. 63, 74, 221 N.W.2d 538, 546 (1974).)

Any doubt that this court should be highly deferential in examining legislative actions was removed by the recent decision in *State of Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), which held that "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 464, 101 S.Ct. at 724 (*quoting Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). Further, "[t]he difference between classes need not be great, and if any reasonable distinction can be found, a court should sustain the classification." *McCannel,* 301 N.W.2d at 917.

The test established by this court to apply these maxims is set out in *Miller Brewing Co. v. State,* 284 N.W.2d at 356:

The test to determine the constitutionality of statutory classifications includes three primary elements: (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve. *Schwartz v. Talmo,* [295 Minn. 356, 363, 205 N.W.2d 318, 323, *appeal dismissed,* 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973) ], *Montgomery Ward & Co., Inc. v. Commr. of Taxation,* 216 Minn. 307, 12 N.W.2d 625 (1943).

In this case, the Tax Court properly applied the three-pronged analysis of *Miller Brewing.* After observing that there are obvious differences in size, management, ownership, markets, and appraisal approaches to value between residential rental properties of three units or less and large residential rental properties, the Tax Court stated:

> The classification can be sustained on a number of logical bases. Structures of four or more units may require more expensive fire and police protection. Smaller units may have proportionately more tax attributed to land value as compared to building value.

> At trial, we received evidence that the legislature may have wanted to blunt the effect of repealing the "limited market value" law and that it had reason to anticipate that smaller rental properties would receive greater increases in value than larger properties. This provides another rationale the legislature could have used in creating this new classification.

Relator does not really dispute these hypothesized legislative facts. He does not deny, as he put it in oral argument, that

"the legislature may have had a ground or two for deciding to give a tax break to three apartments or less." Further, relator states in his brief that he "does not challenge the legitimacy of the governmental objective," which in this case is to afford relief to the small property owners. *Compare McCannel, supra,* where this court upheld the limited value law providing property tax relief for owners of properties which had increased greatly in value in a short period of time.

What relator does argue, however, is that the means used by the legislature to achieve the proper purpose is constitutionally defective. Relator says there is no rational basis for the classification; that once the legislature decided to give relief for small properties, it had to do the same for large properties. This is because—and here we get to the heart of relator's claim—apartment units are all the same, all being devoted to the same use. "They all rent to renters, that's the business they are in." It follows, then, to complete the taxpayer's argument, that since the properties share the same use, they are similarly situated and therefore must be one class for tax purposes. "The need for a tax break," concludes the relator, "does not change the character of the property."

We do not find relator's argument persuasive. The fact that apartment units may all be put to the same use does not necessarily mean that they are all similarly situated for tax purposes. As the Tax Court points out, with respect to consumption of governmental services such as fire and police protection and in regard to the possible impact from the repeal of the limited-value tax statute, the small and large properties are not similarly situated. Or, to put it another way, the distinctions between the two classes are genuine, not fanciful, and, consequently, the third prong of *Miller Brewing* is satisfied.

As the Tax Court found, there are manifest differences between a duplex and a large multiunit complex, and the fact that these differences diminish when comparing triplexes to four-unit properties goes to where the line should be drawn. For constitutional purposes, the line drawn need not be perfect. As Justice Holmes observed:

> When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark.

*Louisville Gas & Electric Co. v. Coleman,* 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770 (1928) (Holmes, J., dissenting).

While this is a close case, we conclude that the line drawn by the legislature between apartment buildings of four or more and three or less units is not "wide of any reasonable mark" and is based on distinctions which are genuine and have a rational basis.

Relator also puts his argument another way. Relying on a series of cases primarily involving a tax on income or receipts of chain stores, *see, e.g., National Tea Co. v. State,* 205 Minn. 443, 286 N.W. 360 (1939), relator contends that a tax statute which distinguishes between classes on "a numerical basis" is unconstitutional if the tax rate is not graduated. At the very least, he contends the tax must be computed on some of his units at the lower rate currently reserved for duplexes and triplexes—even though the average property taxes paid per unit on large properties would still be higher than for the duplexes and triplexes. But this argument is dependent on whether, as relator further elaborates, the statute "treats similarly situated taxpayers differently by not allowing them to share the same benefits." In other words, we have

returned full circle to relator's initial argument that all apartment units, no matter in what size of a building, remain fungible and similarly situated, an argument we have already rejected.

We hold, therefore, that the classification of properties for real property tax assessment under Minn.Stat. § 273.13, subd. 19 (1979), is constitutional.

Affirmed.